IN THE MATTER OF THE APPEAL OF A. S.
HUMPHREYS, FIRST JUDGE OF THE CIRCUIT
COURT OF THE FIRST CIRCUIT, FROM A
RULING OF THE AUDITOR CONCERNING THE
COMPENSATION OF BAILIFFS.

SUBMITTED AUGUST 21, 1902.          DECIDED AUGUST 25, 1902.

PERRY, J., AND W. O. SMITH, ESQ., AND J. T. DE BOLT, ESQ., OF
THE BAR, IN PLACE OF FREAR, C.J., AND GALBRAITH, J.,
ABSENT.

No appropriation was made by Act 10 of the Laws of 1901 for payment
of the compensation of the bailiffs whose appointment was thereby
provided for, nor was the Treasurer by that Act authorized to pay
such compensation.

OPINION OF THE COURT BY PERRY, J.

This is an appeal by the First Judge of the Circuit Court of
the First Circuit, taken under Section 16 of Act 39 of the Laws
of 1898, from a ruling of the Auditor.

Under Act 10 of the Laws of 1901, bailiffs have been ap-
pointed by Circuit Judges of the Territory. These bailiffs have
been paid for their services at the rates specified in Section 5 of
that Act, the total amount so paid out of the treasury to date
being $5040. The payments were made, upon warrants issued
by the Auditor, out of the appropriation of $36,000 for "Ex-
penses Supreme and Circuit Courts" made by Section 1 of Act
4 of the Extra Session of 1901. That appropriation recently
became exhausted. On the 19th inst. the present appellant ad-
dressed a communication to the Auditor, claiming that the pay-
ments had been made out of the appropriation last referred to
without authority of law and demanding that the sum of $5040

be credited to that appropriation so that the same might become immediately available to meet the current expenses of the Supreme and Circuit Courts. The Auditor refused to comply with the demand and it was from that refusal that this appeal was taken.

The contention of the appellant is that Section 5 of Act 10, Laws of 1901, contains an appropriation of the sums necessary for the compensation of the bailiffs at the rates prescribed. The question is one of construction. Section 5 reads as follows:

"That the bailiffs appointed under the provisions of this Act shall be paid for their services at and after the following rates, and it shall be the duty of the Auditor of the Territory of Hawaii, to draw a warrant for the same upon the Treasurer of the Territory of Hawaii, upon an order so to do under the seal of the court, of any Judge of the Court by whom any such bailiff may have been appointed, that is to say:

The bailiff of the Supreme Court per month ......... $100.00
Additional bailiffs at the rate per day .............     5.00
The bailiffs of the First and Fourth Circuits per month  85.00
The bailiffs of the Second, Third and Fifth Circuits per
    month ...................................        50.00
Additional bailiffs for the several Circuit Courts, per
    day, for each day of actual service ............      3.00"

The title of the Act is: "An Act relating to the appointment of bailiffs for certain courts in the Territory of Hawaii and defining the duties and powers of such bailiffs and fixing the amount of their compensation, and providing for the payment of such compensation."

It is to be observed, that the section does not expressly, by apt or usual words, appropriate money for the payment of the compensation specified or authorize the Treasurer to make such payment. Such appropriation or authority, if it is made or granted at all by the section, is to be found only by inference from the fact that the section provides the rates of compensation and makes it the duty of the Auditor to draw warrants for the same upon the order of the judge making the appointment. The argument advanced is that the legislature could not have intended to direct the issuance of warrants without also intending that such

warrants should be honored at the treasury; that the provision that the bailiffs "shall be paid for their services at and after the following rates" is in itself an appropriation, and that the last clause of the title of the Act shows that it was the intention of the legislature to make an appropriation in the Act itself.

The inference just referred to, assuming it to be a possible one, is not a necessary one. It would be competent for the legislature to provide in this Act the rates at which certain officers were to be paid and also the procedure necessary to be followed in order to make it the duty of the Auditor to issue warrants, and to leave the making of an appropriation for such payments to another Act. Section 5, standing by itself and reading its language in its usual and ordinary acceptation, does not purport to do more than to fix the rates of compensation and to declare the circumstances under which it becomes the duty of the Auditor to issue the warrants. This last declaration may well have been made,— and we think that it was—in order to place it beyond the power of the Auditor or any "Head of a Department" to prevent the approval or payment of the salaries in question and to leave such approval entirely to the Circuit Judge making the appointment. Under Section 17 of the Audit Act of 1898, the Auditor was directed not to "recognize any claim of whatsoever nature unless a written statement or voucher be presented for the same" and under Section 33 was authorized, with the consent of the Executive Council, to make and publish such regulations not inconsistent with the Act as might be found necessary to carry out its objects and for the more effectual audit of all disbursements of public moneys. By virtue of this authority certain regulations were made and published to take effect July 1, 1898, one of which (No. 1) required, *inter alia*, that there be deposited with the Auditor "by the heads of the several departments," as soon as practicable before the last day of each month, lists of permanent employees of the government receiving regular monthly salaries, such lists to bear "the approval of the head of the department employing such persons," and providing that warrants would be issued by the Auditor upon receipt of such lists. The item for

"Expenses of Supreme and Circuit Courts" appears and has usually appeared under the title, "Judiciary Department"; the bailiffs provided for by Act 10 were to be employees of that, if any, department, and, in the absence of an express provision to the contrary in Act 10, there would have been at least reason for the argument that the bailiffs of the circuit courts would not be entitled to receive warrants for their salaries without first obtaining the approval of the Chief Justice of this Court as the head of the Judiciary Department. Hence the special provision in Section 5.

Act 10, while authorizing the Chief Justice of the Supreme Court and the Circuit Judges to appoint such additional number of bailiffs as may be deemed necessary and while providing the rate of compensation per day for such additional officers, does not limit the amount which may be expended for this purpose during the biennial or any period. This fact furnishes strong reason for believing that it was not the intention of the legislature to authorize, by Act 10 itself, the payment of any of the salaries or compensation named. It is not to be presumed that the legislature intended to leave it to an executive or to a judicial officer to determine, without limitation, the amount to be expended for a certain purpose. We think that the limitation was, as usual, prescribed, and that it is to be found in the item of $36,000 above referred to appropriated in Act 4 of the extra session.

Much reliance is placed by the appellant upon the clause in the title, "and providing for the payment of such compensation," as showing an intent to make an appropriation. The presence of that clause does, indeed, furnish ground for the argument advanced but is not, in our opinion, sufficient to outweigh the considerations in favor of the view that by the Act no appropriation was made or authority given to the Treasurer to pay. If it was the intention of the legislature to authorize the payment, that intention was not sufficiently expressed in the Act; and it is the intention *as expressed* that is to be ascertained.

If the language of Section 5 of Act 10 is to be regarded as of doubtful construction, assistance is to be found in the fact that

the same legislature which passed the Act within three months thereafter practically construed Section 5. Act 10 was approved on April 26, 1901. On July 18 of the same year, at the extra session, Act 3 was approved, appropriating salaries and pay-rolls. In that Act appears the item, under the title of the Judiciary Department , "Salary Supreme Court Bailiff, $2400," the total of the salary provided for that officer by Act 10. In the absence of a good showing to the contrary, we must presume that the legislature would not have appropriated this sum for this purpose in the later Act if it had already made an appropriation of the same amount for the same object in the earlier Act. The irresistible inference is that the legislature itself construed Act 10 as not making any appropriation. The explanation suggested that the legislature in inserting the item referred to in Act 3, merely followed custom and acted inadvertently, is insufficient. By the appropriation of $36,000 in Act 4, provision was made for the payment of the bailiffs other than that of the Supreme Court specifically provided for in Act 3. Thus construed, the three Acts supplement each other and are consistent.

Passages from the Journal of the House of Representatives for the regular session of 1901, showing that attempts were made by motion to amend the proposed Bailiff Act by striking out Section 5 and by striking out the last two clauses of the title, are referred to by the appellant as indicating that the bill was at that time regarded as including an appropriation. We see no weight in the argument. For aught that appears in the Journal, the motions may have been based on other grounds, as, for example, that it was objectionable to fix the rates of compensation in the Act or to make the procedure as to the issuance of warrants different in any respect from that provided for by the general Audit Act.

Some degree of public inconvenience would doubtless be avoided by the adoption of the construction of Section 5 of Act 10 contended for by the appellant. We cannot, however, give to the Act that construction. In our opinion, no appropriation of money is made by Act 10 and no authority is thereby given to

the Treasurer to pay any of the compensation the rates of which are fixed by Section 5. The warrants in question were correctly drawn upon the appropriation for "Expenses of Supreme and Circuit Courts."

It may be remarked that, as appears from the statement of facts contained in a letter of the Auditor on file herein, the warrants have been paid from this appropriation of $36,000 "upon vouchers approved by the judges presiding in the several circuits," accompanied by the necessary orders of court. In other words, the Circuit Judges would seem to have placed upon Act 10 the construction now adopted by us.

On behalf of the Auditor, it is contended that, the appeal provided for by Section 16 of Act 39 of the Laws of 1898 being to "the Justices of the Supreme Court," no authority of law exists for filling, as has been done in this case, the vacancies caused by the absence of Chief Justice Frear and Associate Justice Galbraith, that such vacancies may be filled only in causes "pending before the Supreme Court," and that this cause is pending, not before the Supreme Court, but before the Justices thereof. The appellant, on the other hand, contends that the vacancies have been legally filled. The question is one of considerable importance, affecting, as it does, in addition to this class of cases, causes submitted under Act 18 of the Laws of 1898, and deserves careful and elaborate argument. No such argument has been presented. In agreed cases submitted under Act 18 just referred to, the practice has been to appoint substitute justices. Under all of the circumstances, we follow the past practice, and assume jurisdiction.

The ruling appealed from is affirmed.

Appellant in person.

*E. P. Dole, Attorney-General,* for appellee.